# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

HAYES LEMMERZ INTERNATIONAL, INC.,

       Plaintiff/Counter-Defendant,

v.                                   Case No. 03-CV-70181-DT

EPILOGICS GROUP and KUHL WHEELS, LLC,

       Defendants/Counter-Plaintiffs.

_____/

**OPINION AND ORDER GRANTING "HAYES'[S] MOTION . . . FOR SUMMARY JUDGMENT FOR NON-INFRINGEMENT OF U.S. PATENT NOS. 6,042,194 AND 6,520,596," DENYING AS MOOT "HAYES'[S] MOTION . . . FOR SUMMARY JUDGMENT FOR NON-VALIDITY OF U.S. PATENT NOS. 6,042,194 AND 6,520,596," GRANTING "HAYES'[S] MOTION . . . [FOR] SUMMARY JUDGMENT ON KUHL'S NON-PATENT CLAIMS" AND DENYING "DEFENDANTS' . . . MOTION FOR PARTIAL SUMMARY JUDGMENT"**

On January 14, 2003, Plaintiff/Counter-Defendant Hayes Lemmerz International, Inc. ("Hayes") filed an action for declaratory relief in this court. Hayes is seeking a declaration that the Struktur Wheel does not infringe on the following two patents held by Defendants/Counter-Plaintiffs Kuhl Wheels, LLC and Epilogics Group ("Kuhl"): patent number 6,042,194 (the "'194 Patent") and patent number 6,520,596 (the "'596 Patent"). Hayes also seeks a declaration that the patents themselves are invalid. Kuhl subsequently filed a counterclaim, alleging patent infringement and a number of non-patent claims. After the court entered its April 25, 2007 claim construction order, the parties filed the pending summary judgment motions. The motions have been fully briefed and the court heard oral argument on November 27, 2007. For the reasons set forth below, the court will grant Hayes's non-infringement summary judgment motion,

deny as moot Hayes's non-validity summary judgment motion, grant Hayes's non-patent summary judgment motion and deny Kuhl's motion for partial summary judgment.

## I. STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "Where the moving party has carried its burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record construed favorably to the non-moving party, do not raise a genuine issue of material fact for trial, entry of summary judgment is appropriate." *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).

Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). The existence of some factual dispute, however, does not defeat a properly supported motion for summary judgment; the disputed factual issue must be material. *See id.* at 252 ("The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict-'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed.'"). A fact is "material" for purposes of summary judgment when proof of that fact would have the effect of establishing or refuting an essential element of the claim or a defense advanced by either party. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984).

In considering a motion for summary judgment, the court must view the facts and draw all reasonable inferences from the admissible evidence presented in a manner most favorable to the nonmoving party. *Dunigan v. Noble*, 390 F.3d 486,492 (6th Cir. 2004) ("We must determine 'not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it upon whom the *onus* of proof is imposed.'"). The court does not weigh the evidence to determine the truth of the matter, but must determine if the evidence produced creates a genuine issue for trial. *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003).

## II. INFRINGEMENT

### A. Literal Infringement and the Doctrine of Equivalents

The patent holder has the burden of proof to establish infringement. *See, e.g., Linear Tech. Corp. v. Impala Linear Corp.*, 379 F.3d 1311, 1325 -26 (Fed. Cir. 2004) ("Because [the patent holder] bears the burden of establishing infringement at trial, in moving for summary judgment [the alleged infringer] need only establish a deficiency concerning an element of [the patent holder's] infringement claim."); *Rohm & Haas Co. v. Brotech Corp.*, 127 F.3d 1089, 1092 (Fed. Cir. 1997). Whether a particular device infringes a properly construed claim generally presents a question of fact. *See Ethicon Endo-Surgery, Inc. v. United States Surgical Corp.*, 149 F.3d 1309, 1315 (Fed. Cir. 1998). "As such, it is amenable to summary judgment where . . . no reasonable fact finder could find infringement." *Id.* (citing *Warner-Jenkinson, Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17 (1997)); *see also Southwall Tech., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1575 (Fed. Cir. 1995).

"Analysis of infringement involves two steps." *Searfoss v. Pioneer Consol. Corp.*, 374 F.3d 1142, 1148 (Fed. Cir. 2004). First, the district court construes the claims of the patent, determining their scope and meaning. *Id.*; *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372-74 (1996). Second, the claims, as construed by the court in step one, are compared limitation by limitation to the features of the allegedly infringing device. *Johnson v. Worldwide Assocs., Inc. v. Zebco Corp.*, 175 F.3d 985, 988 (Fed. Cir. 1999). The court accomplished step one in its April 25, 2007 claim construction order.

Literal infringement occurs only if each limitation of the claim is present in the accused device. *Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1330 (Fed. Cir. 2001); *Intellicall, Inc. v. Phonometrics, Inc.*, 952 F.2d 1384, 1389 (Fed. Cir. 1992). Any deviation from the claim precludes a finding that the accused device infringes. *Telemac*, 247 F.3d at 1330 (citing *Cole v. Kimberly-Clark Corp.*, 102 F.3d 524, 532 (Fed. Cir. 1996)).

However, "[e]ven where an accused device falls outside the literal bounds of a claim, it may still infringe under the doctrine of equivalents if every claim element is literally or equivalently present in the accused device." *Sage Products, Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1429 (Fed. Cir. 1997). The doctrine of equivalents allows the patentee to claim those insubstantial alterations that were not captured in drafting the original patent claim but which could be created through trivial changes. *See generally Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722 (2002). Under the doctrine of equivalents, "[a]n element in the accused product is equivalent to a claim limitation if the differences between the two are 'insubstantial' to one of ordinary

skill in the art." *Eagle Comtromics, Inc. v. Arrow Commc'n Labs., Inc.* 305 F.3d 1303, 1315 (Fed Cir. 2002). Infringement under the doctrine of equivalents, however, "requires that the accused product contain each limitation of the claim or its equivalent." *Id.* (citing *Warner-Jenkinson*, 520 U.S. at 40). "[I]n every infringement analysis, the language of the claims, as well as the nature of the accused product, dictates whether an infringement has occurred." *Fantasy Sports Props., Inc. v. Sportsline.com, Inc.*, 287 F.3d 1108, 1118 (Fed. Cir. 2002).

## B. Preliminary Matters

As an initial matter, the court notes that Kuhl's response focuses on Hayes's various United States and European Struktur Wheel patents and the development of the Struktur Wheel to support its claim that Hayes copied the Kuhl Wheel. Because copying "is of no import on the question of whether the claims of an issued patent are infringed," this issue is irrelevant and will not be considered in the court's infringement analysis. *Allen Eng'g Corp. v. Bartell Indus.*, 299 F.3d 1336, 1351 (Fed. Cir. 2002).

At the hearing, Kuhl contended that the court should nonetheless consider the Struktur Wheel patents because there is no evidence that the Struktur Wheel depicted in the various filings is the same wheel Hayes has been selling. In advancing this argument, Kuhl confuses the parties' burdens of proof in this case. In its January 14, 2003 complaint, Hayes sought a declaration that "[t]he Struktur Wheel does not violate or otherwise infringe upon the Kuhl Patents." (Hayes's Complaint at ¶ 51.) Since that time, Kuhl has filed a counterclaim alleging that the Struktur Wheel infringes its patents, Hayes submitted diagrams of the Struktur Wheel, the parties deposed numerous witnesses on the development of the Struktur Wheel, the parties obtained expert reports

analyzing the physical properties of the Struktur Wheel, the parties deposed these experts on their findings and the parties filed cross motions for summary judgment on whether the Struktur Wheel infringes Kuhl's patents. At no point did Kuhl contend that the Struktur Wheel is not the wheel at issue in this case and Kuhl has not, even now, challenged the accuracy of the Struktur Wheel diagrams by introducing any evidence that these diagrams may be inaccurate.

It is Kuhl's burden to show that the Struktur Wheel infringes its patents. In its non-infringement motion for summary judgment, Hayes has challenged Kuhl's infringement claim by pointing to an absence of material fact as to the Struktur Wheel. In facing this challenge, it is Kuhl's burden to submit actual admissible evidence to show that this is not the case. Kuhl's mere speculation that the Struktur Wheel may not be an accurate depiction of the wheels currently in use does not constitute evidence. If Kuhl was concerned about the authenticity of the Struktur Wheel, Kuhl had the opportunity during discovery to challenge Hayes's representations and obtain evidence to support its position. Kuhl's failure to do so will not preclude a finding of summary judgment on the wheel the parties and the court have been calling the Struktur Wheel for almost five years.

Moreover, it is not clear that Kuhl's concern is relevant. The scope of this case is limited to whether the Struktur Wheel infringes Kuhl's patents and this determination is not dependent on whether Hayes is actually selling the Struktur Wheel. If Kuhl's concern is accurate and Hayes is selling numerous versions of the Struktur Wheel, which materially differ from the Struktur Wheel diagrams and descriptions filed in this case, Kuhl is free to bring a separate infringement action against those wheels.

## C. Infringement Analysis

Hayes argues in its motion for summary judgment for non-infringement that the Struktur Wheel does not infringe on either patent either literally or under the doctrine of equivalents. In its reply, Kuhl admits that, under the court's claim construction order, the Struktur Wheel does not literally infringe on either patent and does not infringe on the '596 Patent under the doctrine of equivalents. (Kuhl's Non-Infringe Resp. at 2.) Therefore, the only infringement issue remaining is whether the Struktur Wheel infringes on the '194 Patent under the doctrine of equivalents. In its motion for summary judgment, Hayes claims Kuhl has not shown that the Struktur Wheel includes all of the '194 patent limitations. (Hayes's Reply at 4.) Specifically, Hayes contends that Kuhl has failed to show that the Struktur Wheel has two elongated spokes and flanges as defined by the claim construction order.

### 1. Elongated Spokes

The first claim of the '194 Patent discloses "a plurality of spoke arrangements, each of which includes at least two elongated spokes respectively including inner ends and outer ends." ('194 Patent, Hayes's Non-Infringe Mot. Ex. 1.) The claim construction order construed the terms "spokes" and "spoke arrangements" as "rods or braces that carry forces between the rim and the hub," which "need not have a particular shape" or "extend from the hub to the rim" but "must be spaced apart by a radially extending opening." (Claim Construction Order at 5-9.)

Hayes argues that, because each Struktur Wheel spoke arrangement contains only one spoke, the Struktur Wheel lacks the required claim element that the two or more elongated spokes "must be spaced apart by a radially extending opening" and

therefore does not infringe on the '194 Patent under the doctrine of equivalents. (Hayes's Non-Infringe Mot. at 16.)  First, Kuhl responds by arguing that the Struktur Wheel spokes are the equivalent of two elongated spokes because "the webbing between the elongated spokes does not completely eliminate [the] claimed function[:] . . . to 'carry forces between the rim and the hub.'"  (Kuhl's Non-Infringe Resp. at 25 (quoting Claim Construction Order at 5).)  Kuhl's proposed construction of the scope of the '194 Patent proves too much and would result in the '194 Patent reading on the prior art.  Indeed, under Kuhl's argument, virtually any new spoke, however varied in shape or construction, would infringe on the first claim of the '194 Patent as long as it could carry some amount of force and, for the same reason, the claim itself would read on virtually all prior art.  The doctrine of equivalents provides that the claim cannot be expanded so far as to cause the claim to read on the prior art.  *In re Certain Steel Toy Vehicles U.S. Int'l Trade Comm'n*, 197 U.S.P.Q. 873, 882 (1978).  Accordingly, the court rejects Kuhl's first argument as deficient as a matter of law.

Kuhl next claims that the difference between the Struktur Wheel's single spoke and the Kuhl Wheel's two elongated spokes is insubstantial because "the axial portions of the Struktur Wheel's two elongated spokes, whether or not they are connected by webbing, straddle the axis of rotation."  (Kuhl's Non-Infringe Resp. at 26.)  The court's claim construction order construed the claim as requiring the elongated spokes to have a radially spaced opening because the '194 patent stressed the importance of the elongated spokes straddling the radius. (Claim Construction Order at 7 (citing '194 Patent, col. 3, Ins. 58 - col. 4, Ins. 2).)

The Struktur Wheel is stamped from a sheet of steel and the thickness of the webbing is comparable to the side flanges. (Guzek Report at 2, Hayes's Non-Infringe Mot. Ex. 6.) Nonetheless, Dr. William Waldron, Kuhl's expert, opined that "two functional (elongated vertical or axial) spokes are present in the Flex wheel, whether or not the web material is removed," (Waldron 2nd Report at 5, Kuhl's Non-Validity Resp. Ex. 34), because the majority of the structural strength in the spoke comes from the axial portions of the spoke arrangement. During Waldron's February 24, 2005 deposition, Waldron agreed that his position was "as long as there is some vertical section there providing additional strength against bending that in [his] mind those vertical sections are functioning as structural spokes." (Waldron's Dep. Tr. at 84, Hayes's Supplement Ex.)

Nonetheless, Waldron estimated that "the web material was at 25 percent of the section resistence of the web and the two spokes." (*Id*. at 84.) In response to the question "so in your opinion that's small enough to say that it's not a signification portion of the strength," Waldron responded "[w]ell, I might have written that in the first report. I guess you could argue about significant. Normally I would say the 25 percent would be significant but not the majority; right?" (*Id*.) Later in his testimony, after he changed his initial webbing resistence calculation from 13 percent to 26 percent, he was asked if "it is still your opinion that the web portion C does not provide a significant amount of resistence to the bending stress in the Flex wheel?" and he responded "I'm not sure that I said–I'm not sure what my wording was, but I would rather phrase it as it's still the spoke pairs that provide the most resistence to bending stress, and of course the return flanges add to that, also." (*Id.* at 162.) Additionally, in his second expert report,

9

Waldron acknowledged that "[t]he results from the rotary tests performed by Guzek, Inc. and the finite element analysis (FEA) results appear to indicate that the performance of the Flex wheel is significantly reduced when the web material between the two spokes is removed." (Waldron's 2nd Report at 6, Kuhl's Non-Infringe Resp. Ex. 34.)

Although Kuhl is technically correct that the sides of the Struktur Wheel spokes carry a majority of the force, there is no factual basis to support a conclusion that the amount of force that passes through the webbing is insubstantial. Because there is no question of fact regarding the webbing's structural significance, the Struktur Wheel spoke arrangement, which includes the webbing, does not infringe the '194 Patent under the doctrine of equivalents as a matter of law.[1]

### 2. Flanges

The first claim of the '194 Patent also discloses "a means for connecting the outer ends of said spokes to said rim." ('194 Patent, Hayes's Non-Infringe Mot. Ex. 1.) The parties agreed that this phrase is a means-plus-function element and the claim construction order found that phrase "is construed as including both (1) a bold, weld or similar fixed connection only and (2) flanges and a bolt, weld or similar fixed connection." (Claim Construction Order at 11.) Hayes requests further claim construction on this issue and proposes a requirement that "[e]ach spoke arrangement must be individually connected to the rim . . . ." (Hayes's Non-Infringe Mot. at 12.) Kuhl has not responded to Hayes's request and has therefore waived argument on this issue. Nonetheless, the court declines to modify the claim construction at this late stage

---

[1]Kuhl alternatively claims that the webbing is simply an extension of the cross bar. (Kuhl's Non-Infringe Resp. at 30.) The court is unpersuaded by this vacuous argument, for which Kuhl provides no support.

because the claim language, as presently construed, already requires the construction Hayes seeks.

The first claim in the '194 Patent specifies, in pertinent part, "a plurality of spoke arrangements, *each* of which includes . . . means for connecting the outer ends of said spokes to said rim." ('194 Patent, Hayes's Non-Infringe Mot. Ex. 1 (emphasis added).) Accordingly, under the plain meaning of the claim language itself, each spoke arrangement must contain its own means for connecting. Furthermore, the claim construction order determined that "[t]he required structure can consist of either (1) a bold, weld or similar fixed connection only or (2) flanges (which need not be short) or equivalents and a bolt, weld or similar fixed connection." (Claim Construction Order at 22.) The claim construction language intentionally included the plural "flanges" and therefore requires more than one means for connecting per wheel.

Accordingly, the means for connecting does not cover the ring embodied in the Struktur Wheel. A single ring, as embodied in the Struktur Wheel, is logically incapable of being reproduced for each spoke arrangement, and this ring is therefore not anticipated by the '194 Patent.

Moreover, Hayes claims that the Struktur Wheel's connecting ring is "a significant and necessary strength imparting structural member (and thus not an equivalent to individually attached spokes)." (Hayes's Non-Infringe Mot. at 19.) To support its position, Hayes submits tests conducted and analyzed by Hayes's technical expert Joe Guzek, which demonstrate that the Struktur Wheel ring provided stiffness, and when the Struktur Wheel was modified to have the spokes individually connect to the rim, the Struktur Wheel failed to pass radial or rotary fatigue tests. (Guzek Report at 2-3,

Hayes's Non-Infringe Mot. Ex. 6.)  Hayes therefore concludes that "[t]hese tests clearly demonstrate the structural significance of the continuous outer connecting ring in the Struktur Wheel, and discredit Kuhl's unsupported position that the full ring is insignificant and inconsequential from a strength imparting standpoint."  (Hayes's Non-Infringe Mot. at 19.)  Kuhl has failed to respond to these claims, except to admit during oral argument that the ring is an improvement over the flanges illustrated in the '194 Patent.

Where, as here, the accused infringer has identified the absence of evidence showing that the accused devices at issue are equivalent to the patent holder's claims, the patent holder must present admissible evidence to create a material issue of fact on its claims for infringement because it maintains the burden of proof on its infringement claims.  *See Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 257) ("The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'").  Kuhl has failed to do so and the court will therefore grant summary judgment to Hayes on this issue.

### III. NON-VALIDITY

In a separate motion for summary judgment, Hayes asserts that there is no genuine issue of material fact as to the non-validity of Kuhl's patents and seeks a declaratory judgment of non-validity.  The court will dismiss this motion as moot in view of the court's finding that the Struktur Wheel has not infringed either patent because "[t]o hold a patent valid if it is not infringed is to decide a hypothetical case" when the

parties' dispute is limited to the accused device that was found not to infringe the contested patent. *Altvater v. Freeman*, 319 U.S. 359, 363-64 (1943). *See also Backyard Nature Prods., Inc. v. Woodlink, Ltd.*, 81 F. App'x 729, 730 (Fed. Cir. 2003) (affirming the district court's order, which granted the defendant's non-infringement summary judgment motion and dismissed the defendant's non-validity summary judgment motion as moot); *Phonometrics, Inc. v. N. Telecom Inc.*, 133 F.3d 1459, 1468 (Fed. Cir. 1998) ("[A] district court has discretion to dismiss a counterclaim alleging that a patent is invalid as moot where it finds no infringement.").[2]

## IV. NON-PATENT CLAIMS

From May 11, 1999 to August 30, 2000, the parties' relationship was governed by a license[3] under which Hayes was given the non-exclusive right to use the Kuhl name and trademark to manufacture and market the Kuhl Wheel worldwide. (License, Kuhl's Non-Patent Resp. Ex. 1.) In exchange, Hayes agreed to pay Kuhl a royalty of

---

[2]The court expresses doubt on the substance of Hayes's motion for non-validity. Although Hayes contends that the patents at issue are invalid under 35 U.S.C. § 102(b) and 35 U.S.C. § 103(a) because prior art anticipated the patents and render the patents obvious, Hayes submits nothing more than diagrams, charts and attorney argument to support its position. "Typically testimony concerning anticipation must be testimony from one skilled in the art and must identify each claim element, and explain in detail how each claim element is disclosed in the prior art reference." *Schumer v. Lab Computer Sys. Inc.*, 308 F.3d 1304, 1315 (Fed. Cir. 2002). Furthermore, when obviousness is based on the teachings found in multiple prior art references, the moving party must establish some "suggestion, teaching, or motivation" that would lead a person of ordinary skill in the art to combine the relevant prior art teachings in the manner claimed. *See Tec Air, Inc. v. Denso Mfg. Mich. Inc.*, 192 F.3d 1353, 1359-60 (Fed. Cir. 1999). Ultimately, patents are to be presumed valid and the court is doubtful that Hayes has met its heavy burden to prove non-validity. *See Price v. Symsek*, 988 F.2d 1187, 1192 (Fed. Cir. 1993) (holding that the party claiming non-validity has a "heavy burden of persuasion").

[3]The license is governed and interpreted by California law. (License § 12.1, 15.1, Kuhl's Non-Patent Resp. Ex. 1.)

$.16 per wheel for the first 1,000,000 Kuhl Wheels sold and $.26 for each Kuhl Wheel sold thereafter. (*Id.*) On August 30, 2000, the parties amended the license to give Hayes an exclusive worldwide license in exchange for a $300,000 initial payment and an increased royalty payment of $1.75 per wheel. (License Amend., Kuhl's Non-Patent Resp. Ex. 17.) Kuhl terminated the license on January 10, 2003.[4]

In Kuhl's June 27, 2003 counterclaim, Kuhl asserts the following non-patent claims relating to the parties' license agreement: breach of contract, fraud, misappropriation of trade secrets, trademark infringement and unfair competition.[5] Hayes moves for summary judgment on each of these counts, contending that the undisputed admissible evidence in the record fails to support Kuhl's claims. (Hayes's Non-Patent Mot. at 2.)

### A.  Hayes's Bankruptcy

In its motion, Hayes maintains that a number of Kuhl's non-patent claims are barred by Hayes's Chapter 11 bankruptcy proceeding. (Hayes's Non-Patent Mot. at 4.) Specifically, Hayes argues that any of Kuhl's claims that are based on Hayes's conduct between December 5, 2001, the filing of its bankruptcy petition, and January 10, 2003, the date the license was terminated, are barred because the license is an executory contract unenforceable against a debtor-in-possession. (*Id.*)

---

[4]Kuhl contends that, because of Hayes's anticipatory breach, Hayes, not Kuhl terminated the license. (Kuhl's Non-Patent Resp. at 33.) As explained below, the court finds that Hayes did not breach the contract.

[5]Kuhl's counterclaim also alleges one count of patent infringement. For the reasons stated above, the court will enter judgment against Kuhl on this count.

Under 11 U.S.C. § 365(a), "the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." In a Chapter 11 bankruptcy proceeding, "the trustee may assume or reject an executory contract . . . at any time before the confirmation of a plan." 11 U.S.C. § 365(d)(2). "Although during the Chapter 11 proceeding a prepetition executory contract remains in effect and enforceable against the nondebtor party to the contract, the contract is unenforceable against the debtor in possession unless and until the contract is assumed." *Mason v. Official Comm. of Unsecured Creditors*, 330 F.3d 36, 43 (1st Cir. 2003) (citing *Nat'l Labor Relations Board v. Bildisco and Bildisco*, 465 U.S. 513, 532 *(overturned on other grounds by* 11 U.S.C. § 1113) ("From the filing of a petition in bankruptcy until formal acceptance, the [executory contract] is not an enforceable contract [against the debtor in possession] . . . . and may never be enforceable again.")).

Here, there is no question that Hayes filed for Chapter 11 bankruptcy protection and the license at issue here is an executory contract.[6] Because Hayes neither

_____

[6]Kuhl admits as much in its response to Hayes's motion for summary judgment, (Kuhl's Non-Patent Resp. at 39), and in the bankruptcy action, (Kuhl's Stay Mot. at 11, Hayes's Non-Patent Mot. Ex. 7), and the court rejects Kuhl's attempt to alter its position during oral argument. Although "[t]he Bankruptcy Code does not explicitly define the term 'executory contract,'" courts have adopted "the definition of executory contracts set forth in Countryman, *Executory Contracts in Bankruptcy*: Part 1, 57 Minn. L. Rev. 439, 460 [(1973)]," which defines an executory contract "as a contract on which performance remains due to some extent on both sides." *Terrell v. Albaugh*, 892 F.2d 469, 471 (6th Cir. 1989) (internal quotations and citations omitted). "The usual patent license, by which the patentee-licensor authorizes the licensee to exercise some part of the patentee's exclusive right to make, use and vend the patented item in return for payment of royalties, ordinarily takes the form of an executory contract." Countryman, *Executory Contracts in Bankruptcy*: Part 2, 58 Minn. L. Rev. 479, 501-02 (1974). At the time Hayes filed its bankruptcy petition, both parties had remaining obligations to complete under the contract. For example, Hayes had a continuing obligation to "provide a commercialization schedule," (License at § 4.1, Kuhl's Non-Patent Resp. Ex. 1), and Kuhl had a continuing obligation to refrain from working with or licensing the

assumed nor rejected the executory contract[7] before Kuhl terminated it,[8] the license

never became enforceable against Hayes during the post-petition period.  *See id.*

Kuhl does not directly refute this conclusion but instead argues that an exception

allows Kuhl to recover the reasonable value of the post-petition benefits it provided to

Hayes under the contract as an administrative expense.  (Kuhl's Non-Patent Resp. at

39.)  Although 11 U.S.C. § 503 authorizes Kuhl to recoup expenses that substantially

and directly benefitted Hayes's estate, Kuhl has "the burden of proving entitlement . . .

by a preponderance of the evidence."  *In re HNRC Dissolution Co.*, 343 B.R. 839, 843

(E.D. Ky. 2006).  Kuhl does not attempt to do so and the record is devoid of evidence

showing that Hayes received any benefit from Kuhl's post-petition performance under

the contract.[9]  Furthermore, to the extent Kuhl had a proper administrative claim, it

waived its right to that claim by failing to file it with the bankruptcy court during the

allotted time period.  (*See* Confirmation Order, Hayes's Non-Patent Reply Ex. 1;

---

licensed patents and licensed technical information to other parties, subject to certain exceptions, (License Amend. at § 2.2, Kuhl's Non-Patent Resp. Ex. 17).

[7]"In the Chapter 11 context, a debtor in possession may assume or reject a contract at any time prior to confirmation pursuant to § 365(d)(2) and cannot be held to have assumed it in fact, since § 365(a) and Bankruptcy Rule 6006 provides that assumption or rejection is subject to court approval, after hearing on notice to interested parties."  *In re Walat Farms, Inc.*, 69 B.R. 529, 534 (Bankr. D. Mich. 1987).  *See also IT Litig. Trust v. Alpha Analytical Labs*, 331 B.R. 597, 603 (Bankr. D. Del. 2005) (citing *University Medical Ctr. v. Sullivan*, 973 F.2d 1065 (3d Cir. 1992) ("[C]ourt approval is a prerequisite to a debtor's assumption of an executory contract.").  In the bankruptcy action, Kuhl recognized this fact when it alternatively moved to require Hayes to accept or reject the executory contract within a specified period of time, which it had a right to do under 11 U.S.C. 365(d)(2).  (Kuhl's Stay Mot. at 11, Hayes's Non-Patent Mot. Ex. 7.)

[8]On January 10, 2003, the automatic stay was lifted to permit Kuhl to terminate the license.  (1/10/03 Bankr. Order, Hayes's Non-Patent Mot. Ex. 6).

[9]For example, it is undisputed that no Kuhl Wheels were ever sold.

Confirmation Plan, Hayes's Non-Patent Reply Ex. 2.) Accordingly, Kuhl's claims based on Hayes's obligations under license are barred to the extent that they are based on Hayes's post-petition conduct.

## B. Breach of Contract

Under California law, Kuhl must prove the following to prevail on its breach of contract claims: (1) the existence of a contract; (2) Kuhl's performance under the contract; (3) Hayes's breach; and (4) Kuhl's damages. *See Armstrong Petroleum Corp. v. Tri-Valley Oil & Gas Co.*, 116 Cal. App. 4th 1375, 1391 n.6 (2004). The parties do not dispute the existence of a contract or Kuhl's performance under the contract. Kuhl alleges that Hayes breached the license by violating its express obligation to (1) diligently manufacture and market Kuhl Wheels, (2) keep Kuhl Wheel information confidential, (3) refrain from using the Kuhl Wheel name for any purpose other than marketing the Kuhl Wheel and (4) provide commercialization schedules for the Kuhl Wheel. (Kuhl's Non-Patent Resp. at 35-37.) Kuhl also claims that Hayes breached its implied obligation of good faith and fair dealing by developing the Struktur Wheel to specifically "compete with the Kuhl Wheel as a cheaper copied version." (*Id.* at 38.)

### 1. Diligence

Kuhl first submits that Hayes was expressly obligated to "diligently pursue and use best efforts to manufacture and market the Kuhl Wheel," which Hayes breached when it (1) "allowed Kermelk to use the information sent to him to develop the infringing wheel" and (2) "marketed the Struktur Wheel as a cheaper version of the Kuhl Wheel and killed the market for the Kuhl Wheel." (*Id.* at 6, 35.) For the reasons stated above, the court rejects Kuhl's first argument to the extent that it requires the Struktur Wheel to

infringe on Kuhl's patents.  Hayes objects to Kuhl's second allegation, arguing that this counterclaim is barred because Hayes did not have any Struktur Wheel pricing discussions with OEMs until February 2002.  (Patzwaldt Dep. at 25, Hayes's Non-Patent Mot. Ex. 15; 2/2/02 Comparison, Kuhl's Non-Patent Ex. 25.)  Kuhl does not maintain that Hayes provided any OEMs with pricing information prior to the petition date, (Kuhl's Non-Patent Resp. at 26), and Kuhl's due diligence counterclaim is therefore barred by bankruptcy law for the reasons stated above.

Even if not barred, Kuhl's due diligence counterclaim fails on the merits.  Hayes stresses that the license at issue here has neither a best efforts nor a due diligence clause, (Hayes's Non-Patent Reply at 21), and, indeed, the court's review of the license and amendment reveals none,[10] (*see* License, Kuhl's Non-Patent Resp. Ex. 1; License Amend., Kuhl's Non-Patent Resp. Ex. 17.)  Although courts "will imply a duty on the part of an exclusive licensee to exploit the subject matter of the license with due diligence," this is done in cases "where such a covenant is essential as a matter of equity to give meaning and effect to the contract as a whole."  *Vacuum Concrete Corp. v. American Machine & Foundry Co.*, 321 F. Supp. 771, 772-74 (S.D.N.Y. 1971).  Courts have refused to imply any such obligation in cases such as this where the license contains a merger clause, (License at § 15.6, Kuhl's Non-Patent Resp. Ex. 1), the licensor retains the right to revert to a non-exclusive license if the royalties paid fall below a certain

---

[10]Kuhl points to a number of license provisions that require Hayes to fulfill certain obligations and indicate the parties' expectation that Kuhl Wheels will be sold.  (Kuhl's Non-Patent Resp. at 35; Kuhl's Partial Summ. J. Mot. at 18.)  Kuhl fails, however, to support the proposition that either contractual duties or the parties' expectations are functionally equivalent to a provision requiring Hayes to exercise due diligence or best efforts in performing its obligations to ensure that their expectations materialize.

threshold, (License Amend. at § 2.2, Kuhl's Non-Patent Resp. Ex. 17), market the licensed product itself under certain circumstances, (*id.* at § 2.3), and receive some sort of guaranteed payment, (*id.* at § 3.1), because in these cases the licensor does not depend on the licensee for its "'sole' compensation." *Vacuum Concrete Corp.*, 321 F. Supp. at 772-74.

More fundamentally, however, Hayes contends that Kermelk did not use Kuhl's licensed technical information to invent the Struktur Wheel. (Kuhl's Non-Patent Mot. at 65.) At his deposition, Kermelk explained that he began to work on the Struktur Wheel in April 2002 after he saw some attractive wheel covers for high vent wheels. (Kermelk Dep. at 40, Hayes's Non-Patent Mot. Ex. 9.) Kermelk wanted to develop a wheel that would fit those wheel covers using existing technology because he did not think that the Kuhl Wheel's rivet attachment would be successful in Europe. (*Id.* at 12-13, 82-84.) When asked, Frank Fitz, a co-inventor of the '194 Patent, was unable to point to any purported confidential or licensed technical information that Kermelk used to develop the Struktur Wheel other than the patents themselves. (Fitz Dep. at 85-100, Kuhl's Non-Patent Mot. Ex. 12.) Additionally, Fitz admitted that his belief that the Struktur Wheel was derivative of the Kuhl Wheel was based on their general appearance.[11] (*Id.*)

In response, Kuhl merely speculates that Hayes's "claim is belied by how novel the Kuhl Wheel was and [how] quickly Kermelk developed the Struktur Wheel." (Kuhl's Non-Patent Resp. at 8.) Mere speculation does not create a triable issue of fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

---

[11]As explained below, to the extent that Kuhl claims that the actual appearance of the Kuhl Wheel was confidential or constituted a trade secret, this claim is rejected because Kuhl had already placed the Kuhl Wheel in the public domain.

Moreover, Hayes responds to this concern by explaining that Kermelk developed the Struktur Wheel based on existing technology, (Kermelk Dep. at 40, Hayes's Non-Patent Mot. Ex. 9),[12] and he was able to obtain the patent in one month because the patent application was based on drawings alone and the time-intensive process of developing prototypes occurred after Kermelk filed the patent application, (Kermelk Decl., Hayes's Non-Patent Reply Ex. 4).

Although Hayes eventually marked the Struktur Wheel, it is undisputed that Hayes marketed the Kuhl Wheel to Ford, GM, DCX and VW, and received interest from each of these OEMs, even though no actual sales resulted from Hayes's marketing efforts. Furthermore, Hayes contests Kuhl's assertion that the Struktur Wheel "killed" the Kuhl Wheel market because there is no evidence that "any OEM would have purchased the Kuhl Wheel if the Struktur Wheel were not available or that they intended to purchase, or would have purchased the Kuhl Wheel." (Hayes's Non-Patent Reply at 22.) The parties agree that there have been no actual sales of any Kuhl Wheel before or after the introduction of the Struktur Wheel. For these reasons, the court rejects this counterclaim.

## 2. Confidentiality

Next, Kuhl asserts that Hayes's "second express breach was [its] failure to keep technical and financial information about the Kuhl Wheel confidential." (Kuhl's Non-

---

[12]At the hearing, Kuhl argued that because Hayes obtained various patents relating to the Struktur Wheel, these patents belied Hayes's claim that the Struktur Wheel was based on existing technology. The court reiterates that Hayes's patents are not at issue in this case. Hayes's Struktur Wheel patents may well be invalid based on prior art, but this issue is not before the court and is irrelevant.

Patent Resp. at 36.)[13] Kuhl asserts that "Hayes first breached this obligation in early 2000 when it told General Motors that the cost of the Kuhl Wheel was going to include a $1.75 royalty that had not yet been agreed to." (*Id.*) Although Hayes admits that it revealed the increased royalty rate to GM, Hayes claims that it did so inadvertently and, more importantly, that Hayes told Kuhl of its mistake before the parties entered into the amendment. (Hayes's Non-Patent Reply at 24.) Although Kuhl disputes Hayes's alleged inadvertence, (Kuhl's Non-Patent Resp. at 36), Kuhl offers no evidence, circumstantial or otherwise, to support its position. More significantly, however, is that Kuhl admits Hayes disclosed the problem before the parties officially agreed to the new royalty and signed the amendment. (Kuhl's Non-Patent Resp. at 6.) Not only did Kuhl fail to exercise its rights and terminate the agreement, Kuhl entered into an amended agreement with Hayes, granting Hayes an exclusive license. Accordingly, Kuhl waived its right to raise this counterclaim as a matter of law.

Kuhl also argues that Hayes breached its confidentiality "obligation in September 2000 when it began to send confidential Kuhl Wheel information to Kermelk in Germany." (Kuhl's Non-Patent Resp. at 36.) Under the license, confidential information

---

[13]To the extent that Kuhl submits that the license itself is confidential, and Hayes breached its confidentiality duty in transmitting a copy of the license to Werner Kermelk, Kuhl's contention fails as a matter of law because the license itself does not state that it is confidential and Kuhl fails to cite to any fact in the record that would support its license confidentiality argument.

includes licensed technical information,[14] derivative technology,[15] and information marked as "confidential" or "proprietary" by the party who discloses the information. (License at § 1.7, Kuhl's Non-Patent Resp. Ex. 1.)

Hayes submits that the information that it sent to Werner Kermelk, an engineer employed by its German subsidiary, contained "results from tests designed and performed *by Hayes employees* at Hayes's facilities on Hayes's equipment that it uses for all of its wheel programs" and is therefore not information Kuhl can claim as *Kuhl's* confidential information. (Hayes's Non-Patent Reply at 14.) Although Kuhl "disputes this meritless claim," (Kuhl's Non-Patent Resp. at 7), Kuhl fails to support its conclusory statement by introducing evidence that these tests were conducted by Kuhl. The license only prohibits Hayes from sharing confidential information "disclosed by one party to the other party," (License at § 7.3, Kuhl's Non-Patent Resp. Ex. 1), and there is no evidence that Kuhl developed and then disclosed to Hayes any of the information Hayes sent to Kermelk. Furthermore, despite Kuhl's position that these results were its

---

[14]To constitute "licensed technical information," the information must be "acquired through [Kuhl's] experience, including without limitation the pending patent applications, trade secrets and technical data, owned by [Kuhl] and relating directly to the design, development, testing, control, manufacture and/or sale of the licensed products, which [Kuhl] may disclose to [Hayes] pursuant to this Agreement." (License at § 1.4, Kuhl's Non-Patent Resp. Ex. 1.)

[15]"Derivative technology" is defined as "all improvements, which are based on the licensed technical information or the licensed patents." (License at § 1.8, Kuhl's Non-Patent Resp. Ex. 1.)

confidential information, Kuhl never attempted to mark the information confidential.

(Hayes's Non-Patent Reply at 14.)  Accordingly, the court rejects this counterclaim.[16]

### 3.  Kuhl Wheel Name

Kuhl contends that "[t]he third express breach was [Hayes's] use of the Kuhl

Wheel name to market the Struktur Wheel," which violated an express provision in the

license that prohibited Hayes from using the Kuhl Wheel name "in a manner not

expressly authorized."  (Kuhl's Non-Patent Resp. at 37; License at § 2.4(b), Kuhl's Non-

Patent Resp. Ex. 1.)  To support its position, Kuhl points to Hayes's Kuhl Wheel

technology presentations to Daimler-Chrysler ("DCX") in April 2002, (DCX Presentation,

Kuhl's Non-Patent Resp. Ex. 44), and Volkswagen ("VW") in July 2002, (VW

Presentation, Kuhl's Non-Patent Resp. Ex. 45), where Hayes presented both the Kuhl

Wheel and the Struktur Wheel.  (*Id.* at 31.)  Because there is no dispute that these

presentations occurred post-petition, this counterclaim is barred by bankruptcy law for

the reasons stated above.

Even if the counterclaim were not barred, during Hayes's Kuhl Wheel

presentation, Hayes clearly labeled the Struktur Wheel as an *alternative* to the Kuhl

Wheel and did not claim that the Struktur Wheel was a Kuhl Wheel.  (DCX Presentation,

---

[16]Kuhl also contends that Hayes sent Kermelk an actual Kuhl Wheel.  (Kuhl's
Non-Patent Resp. at 7.)  To the extent that Kuhl claims that the actual appearance of
the Kuhl Wheel was confidential or constituted a trade secret, this claim is rejected
because Kuhl had displayed the Kuhl Wheel previously and obtained the patents which
included Kuhl Wheel diagrams.  (*See* License at § 1.7, Kuhl's Non-Patent Resp. Ex. 1
(excluding information "in the public domain" from the definition of confidential
information).  "Once the information is in the public domain and the element of secrecy
is gone, the trade secret is extinguished and the patentee's only protection is that
offered under the patent law."  *Forcier v. Microsoft Corp.*, 123 F. Supp. 2d 520, 528
(N.D. Cal. 2000) (internal citations and quotations omitted).

Kuhl's Non-Patent Resp. Ex. 44; VW Presentation, Kuhl's Non-Patent Resp. Ex. 45.)

Furthermore, even if there was a likelihood of confusion, Kuhl's damages theory is

based on lost royalties and Kuhl does not dispute that no sales of either the Kuhl Wheel

or the Struktur Wheel resulted from this presentation. For these reasons, the court will

grant Hayes's motion for summary judgment on this counterclaim.

### 4. Commercialization Schedules

Kuhl submits that "[t]he fo[u]rth express breach was [Hayes's] failure to provide

annual updated commercialization schedules" as required under the license. (Kuhl's

Non-Patent Resp. at 37; License at § 4.2, Kuhl's Non-Patent Resp. Ex. 1.) To the

extent Kuhl bases this counterclaim on Hayes's alleged post-petition obligations,

bankruptcy law prevents Kuhl from doing so for the reasons stated above.

To the extent that Kuhl bases this claim on Hayes's pre-petition obligations,

Hayes admits that it was required to provide annual commercialization schedules but

contends that it fulfilled its obligation by providing Kuhl with oral updates and that Kuhl

neither complained about Hayes's method of reporting nor requested formal, written

schedules until August 2002. (Hayes's Non-Patent Reply at 26.) Although Kuhl claims

it was not "fully informed," the only information Kuhl claims Hayes withheld was Hayes's

alleged practice of sending "confidential Kuhl Wheel information to Kermelk to develop

and patent the Struktur Wheel." (Kuhl's Non-Patent Resp. at 28.) Because the court

has previously found that Kuhl failed to substantiate this allegation, Hayes had no

obligation to disclose this practice to Kuhl.

Furthermore, Kuhl does not dispute that, after it asked Hayes for a

commercialization schedule on August 6, 2002, Hayes provided the requested

information on September 27, 2002.  (Kuhl's Non-Patent Resp. at 29.)  Accordingly, there is no factual dispute regarding whether Hayes provided Kuhl all the information it was obligated to provide under the contract.  Further, to the extent that Hayes failed to provide the information in a manner required under the contract, Kuhl waived the error by failing to object to Hayes's manner of performance.  This counterclaim therefore fails as a matter of law.

### 5.  Good Faith

Finally, Kuhl argues that Hayes breached its implied covenant of good faith and fair dealing by developing the Struktur Wheel to specifically compete with the Kuhl Wheel.  (Kuhl's Non-Patent Resp. at 38.)  Under California law, the license imposed a duty of good faith and fair dealing on both parties.  *Carma Develop. v. Marathon Develop. California, Inc.*, 2 Cal. 4th 342, 371 (Cal. 1992).  This obligation, however, "is limited to assuring compliance with the express terms of the contract."  *American Hearing and Aid Assoc. v. GN ReSound North America*, 309 F. Supp. 2d 694, 704 (E.D. Penn. 2004) (applying California law).

Although Kuhl claims that "Hayes was free to develop other wheels that might compete with the Kuhl Wheel so long as they were not specifically developed to compete with the Kuhl Wheel and did not interfere with the agreement to diligently pursue the Kuhl Wheel," (Kuhl's Non-Patent Resp. at 38), Kuhl fails to point to any fact or authority supporting this fine distinction.  The parties agree "that it is standard procedure for Hayes to offer six or seven wheels to an OEM for any particular vehicle and that those wheels essentially compete with each other," (Hayes's Non-Patent Mot. at 12; Kuhl's Non-Patent Resp. at 23), the parties never discussed whether Hayes

would sell competing wheels, (Kuhl's Non-Patent Resp. at 24), and the license does not limit Hayes in this manner.[17]

For the reasons stated above, there are no issues of material fact regarding whether Hayes breached the license and Hayes is entitled to summary judgment on this counterclaim.

## C. Fraud

### 1. Inducement

Kuhl advances a theory whereby Hayes intentionally entered into an amended license agreement with the intention of co-opting Kuhl's patented technology to create a more cost-effective wheel and market that wheel to Kuhl's detriment. (*See generally* Kuhl's Non-Patent Resp.) Kuhl's "inducement claims [are] based on [Hayes's] false promise to diligently pursue the Kuhl Wheel and pay the increased $1.75 royalty agreed to in the second amendment." (*Id.* at 41.) Kuhl admits that it "does not have direct evidence to show breach of this promise, but it has good circumstantial evidence." (*Id.*) Specifically, Kuhl alleges the following facts to support its contention: (1) Hayes sent Kermelk a copy of the confidential license and confidential Kuhl Wheel information and (2) Hayes revealed the increased $1.75 royalty rate to GM in 2000. (*Id.*) Kuhl's arguments are duplicative of its previously-rejected breach of contract claims and, as such, these allegations cannot form the basis for a valid fraud claim for the reasons discussed above.

---

[17]Instead, the license leaves in Hayes's sole discretion the decision whether to market the Kuhl Wheel to any particular program, giving that right to Kuhl if Hayes elects not to do so, and therefore appears to contemplate a situation where Hayes and Kuhl directly compete to supply wheels for a particular vehicle. (License Amend. at § 2.3(b), Kuhl's Non-Patent Resp. Ex. 17.)

## 2. Concealment and Misrepresentation

Kuh's "concealment and misrepresentation claims are based on a series of acts designed to mislead Kuhl into believing Hayes was diligently pursuing and was committed to the Kuhl Wheel." (Kuhl's Non-Patent Resp. at 42.) Kuhl bases this counterclaim on the following factual allegations: (1) "Hayes waited until the amendment for the increased royalty was about to be signed before it told Kuhl about the [royalty] disclosure; (2) Hayes "started sending confidential Kuhl Wheel information to Kermelk in September 2000, who used that information to create the Struktur Wheel in May 2001;" and (3) Hayes's 2002 GM marketing efforts. (*Id.* at 42-43.) As explained the court previously explained, the court rejects these allegations as a matter of law and will grant summary judgment in Hayes's favor on these counterclaims.

## D. Misappropriation of Trade Secrets

"Under California law, a person cannot be held liable for misappropriation unless he or she unlawfully acquires, discloses, or uses information that is a 'trade secret.'" *Forcier v. Microsoft Corp.*, 123 F. Supp. 2d 520, 528 (N.D. Cal. 2000) (citing Cal. Civ. Code § 3426.1). Because Kuhl's misappropriation of trade secrets count relies on the same confidentiality arguments Kuhl raises to support its breach of contract claims, Hayes is entitled to summary judgment on this claim for the reasons stated above.

## E.  Trademark and Unfair Competition

For Kuhl to prevail on its trademark infringement and unfair competition[18] claims,

Kuhl must demonstrate a likelihood of confusion between the Kuhl Wheel and the

Struktur Wheel.  Likelihood of confusion is analyzed under the following eight factors:

> (1) strength of the . . . mark, (2) relatedness of the goods or services, (3)
> similarity of the marks, (4) evidence of actual confusion, (5) marketing
> channels used, (6) likely degree of purchaser care, (7) the defendant's
> intent in selecting its mark, (8) likelihood of expansion of the product lines.

*Frisch's Rests., Inc. v. Elby's Big Boy of Steubenville, Inc.*, 670 F.2d 642, 648 (6th Cir.

1982).  Kuhl first attempts to use Hayes's internal communications to "show intent" to

deceive Kuhl, and points generally to its fact section to support its claim.  (Kuhl's Non-

Patent Resp. at 44.)  The court finds no documentation supporting Hayes's alleged

intent to deceive and Kuhl has failed to produce facts supporting this claim.

Second, Kuhl points to Hayes's presentations to DCX and VW and discussions

with GM as evidence of Hayes's trademark violation and unfair business practices.  As

stated above, these events occurred post-petition and cannot form a basis for Kuhl's

claim.  Nonetheless, Kuhl's claims ultimately fail on the merits as well.

Kuhl claims that Hayes's presentation to DCX and VW "generated confusion . . .

as to why [Hayes was] presenting 2 solutions to the Beetle design."  (11/25/02 Heck

Memo at 2, Kuhl's Non-Patent Resp. Ex. 102.)  Accepting this statement as true,

however, does not lead to the conclusion that there was confusion between the two

designs themselves.  To the contrary, the memo Kuhl cites continues, stating that "[t]he

---

[18]Kuhl brings its unfair competition claim under Section 17200 of the California
Unfair Business Practices Act, which is subject to the same analysis as trademark
infringement claims under the Lanham Act.  *See M2 Software Inc. v. Madacy
Entertainment*, 421 F.3d 1073, 1089-90 (9th Cir. 2005).

pluses and minuses of each construction were explained and we explained that [Hayes] wanted to supply the construction the customer felt comfortable with." (*Id.*)

Furthermore, there is no issue of fact as to whether GM was confused. GM acknowledged that Hayes characterized the two wheels as "significantly different," (1/29/02 GM E-mail, Kuhl's Non-Patent Ex. 50), and after Hayes presented both the Kuhl Wheel and Struktur Wheel to GM, and inadvertently transposed the engineering specifications for each wheel, GM noticed the error and wrote back to correct Hayes, (GM E-mails, Kuhl's Non-Patent Resp. Ex. 78). Kuhl presents no evidence of actual confusion or likelihood of confusion resulting from Hayes's alleged conduct and Hayes's motion for summary judgment will be granted as to this counterclaim.

## V. KUHL'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Kuhl filed its motion for partial summary judgment on July 12, 2007. In its motion, Kuhl contends that (1) there is no evidence to support Hayes's patent non-validity claims and (2) there is no dispute that Hayes breached the license agreement and implied covenant of good faith and fair dealing. These issues are considered at length above. Inasmuch as the court has found summary judgment proper on Hayes's non-patent motion for summary judgment, Kuhl's non-patent claims are rejected. Furthermore, because the court found Hayes's non-validity summary judgment motion moot, Kuhl's non-validity claims are similarly moot. For these reasons, the court will deny Kuhl's partial motion for summary judgment.

## VI. CONCLUSION

IT IS ORDERED that "Hayes'[s] Motion . . . for Summary Judgment for Non-Infringement of U.S. Patent Nos. 6,042,194 and 6,520,596" [Dkt. # 160] is GRANTED.

IT IS FURTHER ORDERED that "Hayes'[s] Motion . . . for Summary Judgment for Non-Validity of U.S. Patent Nos. 6,042,194 and 6,520,596" [Dkt. # 161] is DENIED AS MOOT.

IT IS FURTHER ORDERED that "Hayes'[s] Motion . . . [for] Summary Judgment on Kuhl's Non-Patent Claims" [Dkt. # 162] is GRANTED.

IT IS FURTHER ORDERED that "Defendants' . . . Motion for Partial Summary Judgment" [Dkt. # 166] is DENIED.

s/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated: November 30, 2007

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, November 30, 2007, by electronic and/or ordinary mail.

s/Lisa G. Wagner
Case Manager and Deputy Clerk
(313) 234-5522